The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Sean O. WILLIAMS, Defendant–
Appellant.

No. 93CA0681.

Colorado Court of Appeals,
Div. I.

Jan. 26, 1995.

Rehearing Denied March 2, 1995.

Certiorari Denied July 31, 1995.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1994 Cum.Supp.).

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., M. Catherine

Duba, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge KAPELKE.

Defendant, Sean Orlando Williams, appeals from the judgment of conviction entered upon jury verdicts finding him guilty of one count of sexual assault on a child, one count of first degree sexual assault, and two counts of second degree sexual assault. We affirm.

Defendant's conviction stems from incidents involving two girls, who were 14 and 15 years old respectively. The victims, who were both students at a high school near the fast food restaurant where defendant worked, were acquainted with defendant prior to the assaults.

According to evidence presented by the prosecution, the first victim and a friend went to the restaurant to see defendant who indicated that he wanted to talk to the victim alone. When defendant and the victim were alone and out of the sight of the victim's friend, defendant pulled the victim into a bathroom and sexually assaulted her.

Defendant allegedly assaulted the second victim on two different occasions. The first incident occurred at the restaurant. After defendant told the victim he wanted to talk to her alone, he took her into the bathroom and sexually assaulted her.

The second incident occurred at a party. Defendant, who had not gone to the party with the victim, went into the bathroom where the victim and a friend were talking, asked the friend to leave, then sexually assaulted the victim.

At trial defendant contended that the victims had consented to having sexual relations with him.

## I.

Defendant first contends that reversal is required because the trial court incorrectly instructed the jury regarding the affirmative defense of consent.

After advising the jury that "the evidence presented in this case has raised an affirmative defense," the trial court gave the following instruction on consent:

It is an affirmative defense to the crimes of Sexual Assault in the First Degree and Sexual Assault in the Second Degree that the victim gave her consent *if the consent negates an element of that offense.* (emphasis added)

This instruction was based on §§ 18–1–505(1) and 18–1–505(4), C.R.S. (1986 Repl.Vol. 8B), and tracks the language contained in *COLJI–Crim.* 7:04 (1983).

Each of the court's elemental instructions to the jury stated that the prosecution was required to prove beyond a reasonable doubt that the defendant committed the acts constituting the offense "without the affirmative defense" of consent.

## A.

Relying on *Lybarger v. People,* 807 P.2d 570 (Colo.1991), defendant argues that the instructions shifted the burden of proof to him on the issue of consent and "improperly relegated to the jury the function of determining the availability" of the defense. We disagree.

Because defendant did not object to the instructions at trial and did not tender alternative instructions, we apply a plain error standard on review. Plain error occurs when we can say "that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Kruse,* 839 P.2d 1, 3 (Colo.1992).

■ At the outset, we note that an instruction in the language of the applicable statute is usually sufficient to advise the jury of the nature of the offense or the affirmative defense described in the instruction. *See Salas v. People,* 181 Colo. 321, 509 P.2d 586 (1973); *People v. Wilson,* 791 P.2d 1247 (Colo.App. 1990).

In *Lybarger v. People, supra,* our supreme court evaluated the trial court's instructions to the jury regarding the affirmative defense of "treatment by spiritual means" in a case of

child abuse resulting in death. Following its instruction on the elements of the offense, the court instructed the jury that:

> If, after considering all the evidence, you find that the prosecution has established beyond a reasonable doubt that the Defendant ... acted in such a manner so as to satisfy all the above elements ... *and that the affirmative defense is not available to the Defendant,* you should find the Defendant guilty of Child Abuse Resulting in Death. *If you find that any of the elements have not been proven beyond a reasonable doubt or that the affirmative defense is applicable* [,] you should find the Defendant not guilty of Child Abuse Resulting in Death.

*Lybarger v. People, supra,* 807 P.2d at 574 (emphasis added).

The trial court in *Lybarger* further instructed the jury that, if the prosecution satisfied its burden of proof with respect to the elements of the offense, the affirmative defense of "treatment by spiritual means" was "not available" to the defendant. In a separate instruction, the court told the jury that:

> *If you find that the evidence presented in this case has raised the issue of the affirmative defense ...* the prosecution then has the burden of proving beyond a reasonable doubt that the affirmative defense is not applicable to the Defendant or his conduct.

*Lybarger v. People, supra,* 807 P.2d at 574 (emphasis added).

The supreme court held that these instructions improperly "vest[ed] the jury with the prerogative to determine whether" the affirmative defense was an issue in the case, and "preempt[ed] the affirmative defense by telling the jury that as long as the prosecution proved beyond a reasonable doubt that the defendant acted in such a manner so as to satisfy all the elements of the crime charged, then the affirmative defense was simply not an issue for the jury's consideration." Thus, the court concluded that the instructions:

> contained erroneous statements of law which improperly relegated to the jury the function of determining the availability or nonavailability of the affirmative defense

and eliminated the prosecution's burden of proof with respect to the affirmative defense.

*Lybarger v. People, supra,* 807 P.2d at 581–82.

Contrary to defendant's assertion, the *Lybarger* decision does not compel us to hold that the trial court's instructions on consent in this case were plainly erroneous.

The General Assembly is "vested with constitutional authority not only to define criminal conduct and to establish the legal components of criminal liability but, as well, to delineate statutory defenses and bars to criminal prosecution." *People v. Guenther,* 740 P.2d 971, 977 (Colo.1987). Within constitutional limitations, the General Assembly also may restrict the applicability of an affirmative defense. *See Rowe v. People,* 856 P.2d 486 (Colo.1993).

In applying a statute, we must give effect to the statutory language according to its plain meaning. *People v. District Court,* 713 P.2d 918 (Colo.1986).

The statute governing the affirmative defense of consent, § 18–1–505(1), provides that:

> The consent of the victim to conduct charged to constitute an offense or to the result therefor *is not a defense unless the consent negatives an element of the offense* or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense. (emphasis added)

Unlike the statutory definition of "treatment by spiritual means" at issue in *Lybarger,* the statutory definition of consent expresses the clear legislative decision to make the defense inapplicable unless the consent either "negatives" an element of the charged offense or precludes the infliction of the harm sought to be prevented by the law defining the offense. Section 18–1–505(1). In accordance with the statute, the trial court's instructions apprised the jury of the first of the two statutory limitations on the applicability of the affirmative defense of consent.

Defendant, however, argues that in sexual assault cases the first statutory limitation on

the applicability of the defense should not apply and that the only limitation should be that the consent must "preclude[ ] the infliction of the harm or evil sought to be prevented by the law defining the offense." Defendant thus argues that the trial court's instruction on consent was an erroneous statement of the law. We perceive no plain error.

Defendant's contention is based on the assumption that the submission element of the offense of first and second degree assault cannot be nullified by the victim's consent because the submission element goes to the *defendant's* state of mind while the defense of consent relates to the *victim's* state of mind. We disagree.

Whether a victim consented to sexual contact is directly relevant to the issue of submission. *See People v. Schmidt,* 885 P.2d 312 (Colo.App.1994); *see also People v. Smith,* 638 P.2d 1 (Colo.1981). Thus, if the victim consented to having sex with defendant, the element of submission would be negated because the victim cannot both consent to sexual contact and be made to submit against her will to such contact. *See also* § 18–3–401(1.5), C.R.S. (1994 Cum.Supp.) (defining "consent" for purposes of sexual assault offenses committed on or after July 1, 1992).

Here, while the trial court's instructions might have been clearer had the court specifically informed the jury that the issue of consent related to the element of submission, we reject defendant's contention that the court's failure so to instruct the jury constituted plain error.

■ Moreover, the instructions in this case did not include the type of improper language contained in the instructions in *Lybarger v. People, supra,* indicating that the jury had the prerogative to decide whether the affirmative defense was available to the defendant. Here, the instructions indicated that the affirmative defense was available to defendant and, in accordance with § 18–1–505(1) and § 18–1–407(2), C.R.S. (1986 Repl. Vol. 8B), that the only questions for the jury to determine were whether the alleged consent negated an element of the charged offenses and whether the prosecution had met its burden of proving that the victims had not consented to having sex with defendant.

Finally, unlike the trial court's instructions in *Lybarger,* the court's instructions here did not improperly shift the burden of proof to defendant on the consent issue. Indeed, the court specifically instructed the jury that:

> The prosecution has the burden of proving the guilt of the defendant to your satisfaction beyond a reasonable doubt as to the affirmative defense, as well as to all the elements of the crime charged.

> After considering the evidence concerning the affirmative defense, with all the other evidence in this case, if you are not convinced beyond a reasonable doubt of the defendant's guilt, you must return a verdict of not guilty.

Absent a showing to the contrary, we presume the jury understood and heeded this instruction. *See People v. Moody,* 676 P.2d 691 (Colo.1984).

In sum, we conclude that the trial court's instructions on the affirmative defense of consent correctly apprised the jury regarding the applicability of the defense and the prosecution's burden of proof on the issue.

### B.

■ Defendant further contends that the instruction on consent was incomplete and misleading because the court did not provide an additional instruction further defining the scope of the defense. Again, we disagree.

The pattern jury instruction indicates that, when appropriate, it may be given together with the definitional instruction contained in *COLJI–Crim.* 7:68 (1983) (Definition 7(11)) which provides that "assent does not constitute consent if . . . it is induced by force, duress, or deception."

Defendant did not object to the trial court's instruction on consent or request that the court give the additional definitional instruction. Accordingly, we again apply a plain error standard on review. *See People v. Fichtner,* 869 P.2d 539 (Colo.1994).

Here, because the additional instruction defines the affirmative defense of consent in

a manner that would have *limited* its availability to defendant, the trial court's failure to give the additional instruction actually benefitted defendant. More specifically, the definitional instruction would have clarified for the jury that the victims' lack of resistance and ultimate submission to defendant's attacks were not tantamount to consent. Without the additional instruction, the jury might have assumed that submission induced by force, duress, or deception could constitute consent.

Because the trial court's failure to give the jury the additional instruction inured to defendant's benefit, it did not constitute plain error. *See People v. Shields,* 822 P.2d 15 (Colo.1991).

## II.

Defendant next contends that the trial court erred by admitting the testimony of a friend and two police officers regarding the first victim's statements to them. We disagree.

Following a hearing on the prosecution's motion in limine, the trial court ruled that the victim's statements to her friend and the officers were admissible under § 13–25–129, C.R.S. (1987 Repl.Vol. 6A) and that the statements to the friend were also admissible as an "excited utterance" under CRE 803(2).

## A.

■ We reject defendant's contention that the victim's statements to her friend and the officers were inadmissible pursuant to § 13–25–129.

Under § 13–25–129, a child's out-of-court statements relating incidents of sexual abuse are admissible if the statements are reliable and the child either testifies at trial or is unavailable to testify but there is corroborative evidence supporting the out-of-court statements. *See also People v. Diefenderfer,* 784 P.2d 741 (Colo.1989). The statute is "the exclusive basis for admitting a child-victim's hearsay statement of a sexual act committed against the child when such hearsay statement is not otherwise admissible under any other specific hearsay exception created by

statute or court rule." *People v. Bowers,* 801 P.2d 511, 517 (Colo.1990).

Before admitting a child's out-of-court statements pursuant to § 13–25–129, the trial court must determine that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." *People v. District Court,* 776 P.2d 1083, 1089 (Colo. 1989).

Defendant does not claim that the court abused its discretion in ruling that the statements were reliable. Rather, he contends that the statements were inadmissible because the victim testified at trial. We are not persuaded.

Section 13–25–129(1)(b)(I), C.R.S. (1987 Repl.Vol. 6A) specifically provides that a child's out-of-court statements regarding sexual abuse are admissible when the child testifies at trial.

Moreover, the admissibility of such statements even when the child victim testifies at trial has been upheld in several cases. *See People v. Salas,* —— P.2d —— (Colo.App. No. 93CA0771, Dec. 15, 1994); *People v. Galloway,* 726 P.2d 249 (Colo.App.1986) and *People v. Koon,* 724 P.2d 1367 (Colo.App.1986).

## B.

■ Defendant also contends that the victim's out-of-court statements were inadmissible because they were cumulative, unduly prejudicial, and amounted to "vouching" for the victim's credibility. Again, we disagree.

Relevant evidence may be excluded under CRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice. In reviewing the trial court's decision to admit the testimony, "we must assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected." *People v. Lowe,* 660 P.2d 1261, 1264 (Colo.1983).

The admission of cumulative evidence is within the trial court's discretion, *People v. Baca,* 852 P.2d 1302 (Colo.App.1992), as is the balancing of probative value against the prejudicial effect of such evidence. *People v. Galloway, supra.*

Here, the victim's statements to the officers were made within a few hours of the assault and while she was still upset. The statements were not made in response to leading questions and were substantially similar to statements she had made to other witnesses who testified at trial. Although portions of the officers' testimony regarding the victim's statements were cumulative of the victim's trial testimony, other portions of the officers' testimony provided new information.

Moreover, while we recognize that the evidence may have been harmful to defendant's case, we cannot conclude that it would have led the jury to make its decision on an improper basis. The trial court mitigated any prejudicial effect of the evidence by giving the jury the following cautionary instruction both at the time the evidence was admitted and at the close of the evidence:

> In this case you heard out of court statements of [one of the victims] which were admitted into evidence.

> You are instructed that it is for you to determine the weight and credit to be given these statements. In making this determination you shall consider the age and maturity of the child, the nature of the statements, the circumstances under which the statements were made, and any other evidence which has been admitted which you choose to consider for this purpose, unless the court has instructed you that it must be considered for some other purpose.

See § 13–25–129(2), C.R.S. (1987 Repl.Vol. 6A).

■ We reject defendant's argument that the officers' testimony amounted to vouching for the victim's credibility. The officers did not testify that they believed the victim's statements or that she was generally a truthful person. Indeed, in some instances, the officers' testimony regarding the victim's out-of-court statements actually contradicted her trial testimony and would have been helpful to defendant.

Under these circumstances, we conclude that the court did not abuse its discretion in admitting the testimony regarding the victim's out-of-court statements. *See People v.*

*Bolton,* 859 P.2d 303 (Colo.App.1993) (admission of child sexual assault victim's hearsay statements to three police officers and victim's father was not reversible even though statements were cumulative); *People v. Galloway, supra.*

## III.

Defendant originally was charged in two separate informations, one relating to each victim. At the prosecution's request, however, the two cases were consolidated for trial. Defendant contends that the trial court improperly consolidated the cases because the evidence regarding defendant's attacks on each victim would not have been admissible in separate trials. We disagree.

### A.

We reject defendant's claim that the evidence regarding his attacks on each victim would not have been admissible in separate trials as evidence of other misconduct.

CRE 404(b) prohibits the admission of evidence of other misconduct to prove the character of the accused in order to show "that he acted in conformity therewith." Such evidence may be admissible under this rule, however, to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See also* § 16–10–301, C.R.S. (1986 Repl.Vol. 8A).

■ In sexual assault cases, such evidence is admissible even when the other misconduct involved different victims. *See Pigford v. People,* 197 Colo. 358, 593 P.2d 354 (1979); *People v. Allen,* 42 Colo.App. 345, 599 P.2d 264 (1979).

■ Before admitting evidence of other crimes or wrongs, the trial court must determine: (1) that the evidence relates to a material fact; (2) that the evidence is logically relevant; (3) that the logical relevance is independent of the prohibited inference that defendant has a bad character; and (4) that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

A trial court is vested with considerable discretion in determining the relevancy of evidence of other misconduct and in ascertaining whether the probative value of the evidence is outweighed by its prejudicial effect. Only if there is an abuse of that discretion will the ruling of the trial court be disturbed. *People v. Ihme*, 187 Colo. 48, 528 P.2d 380 (1974); *People v. Crespin*, 631 P.2d 1144 (Colo.App.1981).

Defendant contends that, as to either victim, the evidence of his assault on the other victim did not satisfy any of the admissibility criteria set forth in *People v. Spoto, supra.* We disagree.

The trial court conducted a hearing to determine the admissibility of the evidence of other misconduct and concluded that the *Spoto* criteria had been met. The record supports the court's conclusion.

First, the evidence of the other misconduct related to defendant's modus operandi and common plan and were thus relevant to intent. All three assaults took place in restrooms after defendant indicated that he wanted to talk to the victims alone. Two of the assaults occurred in the same restroom at the restaurant where defendant worked. During each attack, defendant forcibly undressed the victims before sexually assaulting them. The attacks took place within a few months of each other. These facts support the trial court's finding that the other misconduct evidence was admissible to show defendant's modus operandi and common plan as relevant to intent. *See People v. Snyder*, 874 P.2d 1076 (Colo.1994); *People v. Delgado*, 890 P.2d 141 (Colo.App.1994); *People v. McKibben*, 862 P.2d 991 (Colo.App. 1993).

Second, the evidence had a tendency to make the existence of the required intent more probable than it would have been without the evidence. *See People v. Delgado, supra; People v. McKibben, supra.* Third, that logical relevance was independent of the inference that defendant had a bad character which could be used to suggest that he committed the crimes because he likely acted in conformity with such bad character. *See People v. McKibben, supra.* Finally, the trial court properly determined that the proba-

tive value of the evidence was not substantially outweighed by the degree of unfair prejudice. While the court noted the potentially prejudicial nature of the evidence, it acted within its permissible scope of discretion in concluding that the prejudicial effect of the evidence did not substantially outweigh its probative value. *See People v. McKibben, supra.*

In sum, we conclude that the evidence regarding defendant's attacks on each victim would have been admissible in separate trials.

**B.**

We also reject defendant's related contention that the trial court improperly consolidated the two cases.

Joinder of criminal cases is permissible when the offenses charged in two or more charging documents "could have been joined in a single indictment, information, complaint, or summons and complaint." Crim.P. 13. Two or more offenses may be charged in the same charging document if:

> the offenses charged ... are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Crim.P. 8(a)(2).

Sexual assault offenses may be joined if the evidence of each offense would be admissible in separate trials. *Pigford v. People, supra; People v. Allen, supra.*

The decision to consolidate informations is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Brown v. District Court*, 197 Colo. 219, 591 P.2d 99 (Colo.1979).

Reversal on the basis of the joinder of offenses is not justified unless the defendant demonstrates actual prejudice as a result of the jury's inability to separate the facts and legal theories applicable to each offense. *People v. Early*, 692 P.2d 1116 (Colo.App.1984).

Moreover, a defendant is not entitled to separate trials based solely on his desire to

testify on fewer than all the charged offenses. To prevent joinder or obtain a severance of offenses on that basis, a defendant must show that "he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *People v. Early, supra,* 692 P.2d at 1119.

As discussed above, the evidence regarding defendant's attacks on each victim would have been admissible in separate trials as evidence of modus operandi and common plan. Accordingly, the trial court did not abuse its discretion in consolidating the two cases for trial. *See Pigford v. People, supra; People v. Allen, supra; see also* Crim.P. 8(a)(2).

Defendant has not demonstrated either that the jury was unable to separate the facts and legal theories applicable to each offense or that he was prejudiced because the joinder of the cases prevented him from testifying about his attacks on the second victim while remaining silent about his attack on the first victim. Accordingly, reversal on the basis of the trial court's joinder of the cases is not justified. *See People v. Early, supra.*

The judgment is affirmed.

METZGER, J., concurs.

CRISWELL, J., specially concurs.

Judge CRISWELL specially concurring.

I agree with the majority that defendant's convictions of one count of first degree sexual assault, two counts of second degree sexual assault, and one count of sexual assault on a child must be affirmed. I also agree with the conclusions expressed in Parts I B, II, and III of the majority's opinion. I do not agree, however, that the instruction on consent given by the trial court "correctly apprised the jury regarding the applicability of [this] defense...." Hence, I write separately to demonstrate why this instruction is improper and why it should not be given in the form in which it appears in *COLJI–Crim.* No. 7:04 (1983).

This consent instruction is based upon § 18–1–505(1), C.R.S. (1986 Repl.Vol. 8B), which is contained within Article 1 ("Provi-

sions Applicable to Offenses Generally") Part 5 ("Principles of Criminal Culpability") of the Criminal Code. This part of the code describes the various culpable mental states, or mens rea, that must exist in order for an offense to have been committed. In this context, § 18–1–504, C.R.S. (1986 Repl.Vol. 8B), describes the effect upon criminal culpability that a mistaken belief of fact may have, while § 18–1–505, C.R.S. (1986 Repl.Vol. 8B) describes the circumstances under which the consent of the victim will result in no culpability.

Section 18–1–505(1) provides that the victim's consent will be a defense to any criminal charge only if such consent "negatives an element of the offense" or "precludes the infliction of the harm or evil sought to be prevented by the law defining the offense."

Sections 18–1–505(2) and 18–1–505(3), C.R.S. (1986 Repl.Vol. 8B) also incorporate the restrictions upon this defense that were generally imposed by the common law. *See* 1 C. Torcia, *Wharton's Criminal Law* § 46 (15th ed. 1993).

Finally, the statute declares that any defense authorized by its terms shall be an "affirmative defense." Section 18–1–505(4), C.R.S. (1986 Repl.Vol. 8B).

The instruction given here informed the jury that the consent of the victim constituted a defense to the charges of first and second degree sexual assault, "*if* the consent negates an element of the offense." (emphasis supplied)

I agree with the majority that, as a general rule, a form of an instruction that incorporates the terms of the governing statute is a proper one. That rule assumes, however, that the subject matter of the instruction is one that is proper for the jurors to consider. And, the question whether the consent of the victim can constitute an affirmative defense to the offense charged, because it would negate an element of that offense, is not a question of fact for jury resolution. It is, rather, a threshold question of law for the court to determine.

Whenever a defendant seeks to assert an affirmative defense to a specific charge, three questions may present themselves.

First, because the General Assembly has, subject to constitutional considerations, the right to create affirmative defenses to crimes and to limit their applicability to particular categories of crimes, *People v. Ledman*, 622 P.2d 534 (Colo.1981), the first issue to be resolved is whether the defense sought to be asserted has been made available by legislative enactment. *See People v. Yaklich*, 833 P.2d 758 (Colo.App.1991) (as a matter of law, affirmative defense of self-defense not available to charge of murder based upon contract to have victim killed). And, such issue is one for the court to resolve. *Lybarger v. People*, 807 P.2d 570, 579 (Colo.1991) ("[T]he question of the *availability* of the defense is for the court and not the jury. . . ." (emphasis supplied))

Second, if the court determines that the defense is legally *available* for assertion as a defense to the crime charged, it must next be determined whether there has been sufficient evidence presented to raise a factual issue as to the existence of the defense. *See* § 18–1–407, C.R.S. (1986 Repl.Vol. 8B) (if state's evidence does not raise the issue, defendant must present some credible evidence upon the issue). And, this question is *also* one of law for resolution by the court. *People v. Fincham*, 799 P.2d 419, 424 (Colo.App.1990) ("[T]he threshold determination of whether an affirmative defense has been raised by the evidence must be made by the court and not the jury.") *See also People v. Dover*, 790 P.2d 834 (Colo.1990) (evidence insufficient to invoke the emergency justification defense).

Finally, if the court determines that the affirmative defense is available to prevent conviction of the offense charged and that there is credible evidence sufficient to raise the issue of the existence of that defense, it then becomes a matter for the jury to determine whether the People have proven that the defense has not been established. *Lybarger v. People, supra.*

Here, the pertinent statute lays down the *legal* circumstances under which the affirmative defense of consent will be *available* against a particular charge, *i.e.*, if the victim's consent would negate one of the elements of the offense or if such consent would preclude the harm or evil the law seeks to preclude. It creates standards by which the court is to determine whether the victim's consent is *relevant* to the defendant's culpability; it does not describe *factual* circumstances the existence of which is to be determined by lay jurors.

I conclude, therefore, that § 18–1–505(1) is to be used solely by the court to determine whether the affirmative defense of consent is available to the defendant in light of the charge laid against him or her. And if, for example, the court determines that the victim's consent to the conduct charged, if established, would exonerate the defendant, because such consent would negate one of the elements of the offense charged, and that there is sufficient evidence to raise this issue, then the jurors should be instructed to acquit the defendant unless they find, beyond a reasonable doubt, that the victim did not consent to the conduct. In addition, in appropriate cases, it would also be proper to instruct the jurors upon the concept of the term "consent." *See COLJI–Crim.* No. 7:68 (1983) (Special Rule 7(11)) and § 18–3–401(1.5), C.R.S. (1994 Cum.Supp.). They should not, however, be allowed to pass upon the legal question (previously determined by the court) whether such consent negates an element of the offense, as the instruction here required them to do.

I conclude, therefore, that the giving of the instruction on consent in the form in which it was given here was error.

However, because of the nature of the other instructions given upon the subject of this affirmative defense, I agree with the majority that this erroneous instruction did not constitute plain error. *See People v. Fincham, supra.* Thus, reversal of the judgment of conviction is not required.